1

2

3

4

5

6

7                          UNITED STATES DISTRICT COURT

8                    FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10   KATHRYN INNETTE HENSLEY,                No.  2:14-cv-42-EFB

11              Plaintiff,

12        v.                                 ORDER

13   CAROLYN W. COLVIN, Acting
     Commissioner of Social Security
14
             Defendant.
15

16

17        Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security

18   ("Commissioner") denying her application for a period of disability and Disability Insurance

19   Benefits ("DIB") under Title II of the Social Security Act.  The parties have filed cross-motions

20   for summary judgment.  For the reasons that follow, plaintiff's motion is granted, defendant's

21   motion is denied, and the matter is remanded for further consideration.

22   I.   BACKGROUND

23        Plaintiff protectively filed an application for a period of disability and DIB on July 30,

24   2009, alleging that she had been disabled since March 31, 2009.  Administrative Record ("AR")

25   83, 194-200.  Her application was denied initially and upon reconsideration.  *Id.* at 85-88, 90-94.

26   On May 22, 2012, a hearing was held before administrative law judge ("ALJ") Tamia N. Gordon.

27   *Id.* at 46-82.  Plaintiff was represented by counsel at the hearing, at which she and a vocational

28   expert ("VE") testified.  *Id.*

                                                 1

1       On June 7, 2012, the ALJ issued a decision finding that plaintiff was not disabled under

2   sections 216(i) and 223(d) of the Act.[1]  *Id.* at 27-39.  The ALJ made the following specific

3   findings:

4       1.  The claimant meets the insured status requirements of the Social Security Act through
       December 31, 2014.

5

6       2.  The claimant has not engaged in substantial gainful activity since March 31, 2009, the
       alleged onset date (20 CFR 404.1571 *et seq.*).

7       * * *

8

9

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq.*  Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. §§ 1382 *et seq.*  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

    The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  *Yuckert*, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  *Id.*

3. The claimant has the following severe impairments: affective disorder; and anxiety-related disorder (20 CFR 404.1520(c)).

* * *

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

* * *

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels except work is limited to simple, routine, repetitive tasks and only occasional interaction with the public.

* * *

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on July 31, 1960 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

* * *

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 31, 2009, through the date of this decision (20 CFR 404.1520(g)).

*Id.* at 29-39.

Plaintiff requested that the Appeals Council review the ALJ's decision, *id.* at 22, and on October 15, 2013, the Appeals Council denied review, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 8-10.

/////

/////

1    II.    LEGAL STANDARDS

2         The Commissioner's decision that a claimant is not disabled will be upheld if the findings

3    of fact are supported by substantial evidence in the record and the proper legal standards were

4    applied.  *Schneider v. Comm'r of the Soc. Sec. Admin*., 223 F.3d 968, 973 (9th Cir. 2000);

5    *Morgan v. Comm'r of the Soc. Sec. Admin*., 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*,

6    180 F.3d 1094, 1097 (9th Cir. 1999).

7         The findings of the Commissioner as to any fact, if supported by substantial evidence, are

8    conclusive.  *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985).  Substantial evidence is

9    more than a mere scintilla, but less than a preponderance.  *Saelee v. Chater*, 94 F.3d 520, 521 (9th

10   Cir. 1996).  "'It means such evidence as a reasonable mind might accept as adequate to support a

11   conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v.*

12   *N.L.R.B.*, 305 U.S. 197, 229 (1938)).

13        "The ALJ is responsible for determining credibility, resolving conflicts in medical

14   testimony, and resolving ambiguities."  *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

15   2001) (citations omitted).  "Where the evidence is susceptible to more than one rational

16   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld."

17   *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

18   III.    ANALYSIS

19        Plaintiff argues that the ALJ erred by improperly discrediting the opinions of her

20   examining physicians.  ECF No. 14 at 11-15.

21        The weight given to medical opinions depends in part on whether they are proffered by

22   treating, examining, or non-examining professionals.  *Lester*, 81 F.3d at 834.  Ordinarily, more

23   weight is given to the opinion of a treating professional, who has a greater opportunity to know

24   and observe the patient as an individual.  *Id*.; *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir.

25   1996).  To evaluate whether an ALJ properly rejected a medical opinion, in addition to

26   considering its source, the court considers whether (1) contradictory opinions are in the record;

27   and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a

28   treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81

4

1  F.3d at 831.  In contrast, a contradicted opinion of a treating or examining medical professional

2  may be rejected for "specific and legitimate" reasons that are supported by substantial evidence.

3  *Id*. at 830.  While a treating professional's opinion generally is accorded superior weight, if it is

4  contradicted by a supported examining professional's opinion (e.g., supported by different

5  independent clinical findings), the ALJ may resolve the conflict.  *Andrews v. Shalala*, 53 F.3d

6  1035, 1041 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

7  However, "[w]hen an examining physician relies on the same clinical findings as a treating

8  physician, but differs only in his or her conclusions, the conclusions of the examining physician

9  are not 'substantial evidence.'"  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007).

10         Plaintiff underwent a psychological evaluation, which was conducted by Dr. Mary

11  McDonald, Ph.D. AR 475-480.  Dr. McDonald diagnosed plaintiff with major depressive

12  disorder, recurrent, chronic, without psychotic features; generalized anxiety disorder; adult

13  antisocial behavior; amphetamine abuse in remission; cannabis abuse in remission; posttraumatic

14  stress disorder; and borderline intellectual functioning.  *Id.* at 479.  Dr. McDonald opined that

15  plaintiff has mild to marked impairments in her ability to understand and remember detailed

16  instructions, but that her ability to understand, remember, and carry out very short and simple

17  instructions is unimpaired.  *Id*. at 479-480.  She opined that plaintiff's ability to maintain attention

18  and concentration for extended periods of time is variable; her ability to accept instructions from

19  supervisors, respond appropriately to criticism, and withstand the stress of a routine day and adapt

20  to various changes in the work setting is poor, and she is markedly impaired in exercising social

21  judgment and awareness and in interacting with coworkers and the general public.  *Id*. at 480.  Dr.

22  McDonald concluded that the likelihood of plaintiff emotionally deteriorating in a work

23  environment was high.  *Id*.

24         On May 15, 2012, at the request of plaintiff's attorney, examining physician Dr. Robert L.

25  Morgan, Ph.D. completed a comprehensive psychological evaluation of plaintiff.  *Id.* at 576-585.

26  Dr. Morgan diagnosed plaintiff with major depressive disorder, recurrent, severe; and panic

27  disorder with agoraphobia.  *Id.* at 583.   Dr. Morgan opined that plaintiff has marked impairments

28  in maintaining activities of daily living and social functioning; interacting with the public,

1   coworkers and supervisors; tolerating the stress of a routine workday and dealing with various

2   changes in the work setting or to complete a normal workday or workweek; and concentrating in

3   relation to complex tasks. *Id.* at 584. Dr. Morgan also opined that plaintiff had fair ability to

4   concentrate relative to simple tasks. *Id*.

5          Examining physician Dr. Benjamin Aleshire, Ph.D. completed a comprehensive

6   psychiatric evaluation on March 14, 2010. *Id.* at 296. Dr. Aleshire diagnosed the plaintiff with

7   posttraumatic stress disorder, chronic; major depressive disorder, recurrent; moderate alcohol

8   dependence; amphetamine dependence, in full sustained remission per the claimant report; two

9   back injuries per the claimant's report, high blood pressure; and a GAF of 48. *Id.* at 299-300. It

10  was Dr. Aleshire's opinion that the plaintiff could adequately perform one to two step simple and

11  repetitive tasks; perform work activities on a consistent basis without special or additional

12  instruction; and is not able to adequately perform complex tasks. *Id*. at 300. He further opined

13  that plaintiff is moderately impaired in ability to accept instructions from supervisors and interact

14  with coworkers and the public; is mildly impaired in ability to maintain regular attendance in the

15  workplace; is significantly impaired in ability to complete normal workday or workweek; and is

16  not able to deal with the usual stress encountered in a competitive workplace. *Id.* at 300-301.

17         The record also contains a Mental Residual Functional Capacity Assessment completed by

18  Dr. G. Ikawa, M.D., a non-examining physician. It was Dr. Ikawa's opinion that plaintiff is not

19  significantly limited in understanding, remembering and carrying out very short and simple

20  instructions; maintaining attention and concentration for extended periods; performing activities

21  within a schedule, maintaining regular attendance and being punctual; sustaining an ordinary

22  routine without special supervision; working in coordination with or proximity to others without

23  distraction; and making simple work-related decisions. *Id.* at 323-324. Dr. Ikawa also found

24  plaintiff is not significantly limited in completing a normal workday and workweek; accepting

25  instructions and responding to criticism; getting along with coworkers; maintaining socially

26  appropriate behavior and standards of neatness and cleanliness; responding to changes in the

27  work setting; but was moderately impaired in understanding, remembering, and carrying out

28  detailed instructions and interacting with the general public. *Id.* Dr. Ikawa concluded that

6

1   plaintiff retained the RFC to sustain simple repetitive tasks, so long as her contact with the public

2   was limited.  *Id.* at 325.  State agency reviewing physician Dr. E. Murillo, M.D. also evaluated

3   plaintiff's records on October 5, 2010 and affirmed the findings of Dr. Ikawa.  *Id.* at 338.

4       In assessing plaintiff's RFC the ALJ purportedly gave "some weight" to the opinions of

5   Drs. Aleshire, McDonald, and Morgan, while giving "great weight" to the opinions of Drs. Ikawa

6   and Murrilo.  *Id.* at 37.  The ALJ explicitly adopted the opinion from Drs. Aleshire, McDonald,

7   and Morgan that plaintiff could perform simple and repetitive tasks, but he found that their other

8   assessed limitations were unduly restrictive when compared to the evidence of record.  *Id*.  As

9   Drs. Aleshire, McDondald, and Morgan's opinions were contradicted by the opinions provided by

10  Drs. Ikawa and Murrilo, the ALJ was required to provide specific and legitimate reasons for

11  resolving the conflict and adopting the nonexamining opinions over the opinions from the

12  examining sources.

13      Plaintiff contends that the ALJ failed to provide legally sufficient reasons for partially

14  rejecting the opinions of Drs. Aleshire, McDonald, and Morgan that plaintiff had significant

15  limitations in accepting instructions from supervisors, interacting with coworkers and the general

16  public, and dealing with the usual stress of competitive work.  ECF No. 14 at 11-15.  Plaintiff

17  also contends the ALJ failed to provide a sufficient justification for rejecting Dr. Aleshire and

18  Morgan's opinion that she was significantly impaired in her ability to complete a normal workday

19  or workweek without interruption from psychological symptoms.  *Id*.

20      The ALJ found that, with the exception of plaintiff's limitation to simple and repetitive

21  tasks, the limitations assessed by these physicians were too restrictive when compared to other

22  evidence in the record.  The ALJ first discussed plaintiff's daily activities, noting that plaintiff "is

23  able to take care of her personal hygiene, prepare simple meals, prepare housework, drive a car,

24  shop for groceries, and pay bills.  She was able to perform calculations and count change during

25  the examination on March 14, 2010."  AR 37.  The ALJ, however, did not explain how the ability

26  to perform any of these activities undermines these physicians' opinions.  It is unclear how the

27  ability to perform any of these menial tasks has any relevance to these physicians' opinions that

28  plaintiff is significantly impaired her ability to accept instructions from supervisors, interact with

7

1    coworkers and the general public, and to deal with the stress of a competitive work week.  With

2    the exception of grocery shopping, none of the activities identified by the ALJ involve interacting

3    with others.[2]  Although grocery shopping may involve some interaction with others, i.e.,

4    interacting with the cashier when purchasing groceries, such interactions are not tantamount to

5    accepting instructions from supervisors and interacting with coworkers.  Furthermore, the ability

6    to perform the activities identified by the ALJ does not demonstrate an ability to deal with stress.

7    Accordingly, the ALJ's erred in relying on plaintiff's daily activities as a basis for rejecting the

8    examining physician's opinions.

9         The ALJ also noted that the evidence in the record indicates that the claimant has no

10   difficulty in completing tasks when she is compliant with her treatment recommendations.  *Id.* at

11   37.  But the ALJ did not cite to any specific evidence in support of this conclusion.  Assuming

12   that such a finding is supported by substantial evidence—a finding plaintiff disputes—it

13   nevertheless fails to provide a basis for rejecting these physicians' opinions.  The ability to

14   concentrate and complete tasks has no relation to plaintiff's ability to accept instructions from

15   supervisors, interact with coworkers and the general public, and deal with the stress of

16   competitive work.  Accordingly, this reason also fails to constitute a legitimate basis for rejecting

17   these physicians' opinions.

18        The ALJ also found that "Dr. McDonald's opinion that the claimant has marked

19   impairments in the ability to interact with the general public may not be valid since the claimant

20   admitted that she gave 'wise ass' answers during this examination."  AR 37.  Plaintiff did indeed

21   report that she gave "wise ass" answers in response to Dr. McDonald's testing.  *Id*. at 565.  Where

22   a physician's opinion is based largely on plaintiff's self-reports that have been discounted, an ALJ

23   may reject the physician's opinion.  *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008).

24   (citing *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999)).  Given

25   plaintiff's lack of effort and honesty during her examination with Dr. McDonald, the ALJ was

26

27        [2]  With the advent of self-checkout, it is now possible to purchase groceries at a store without interacting with others.

28

1    permitted to give reduced weight to this physicians' opinion.  *See Macri v. Chater*, 93 F.3d 540,

2    544 (9th Cir. 1996) (the ALJ is entitled to make logical inferences stemming from the evidence).

3              However, this reason does not provide a basis for rejecting the opinions of Drs. Aleshire

4    and Morgan.  Dr. Aleshire specifically found that plaintiff was moderately impaired in her ability

5    to accept instructions from supervisors and interact with coworkers and the public (*id*. at 300),

6    while Dr. Morgan found that she had marked limitations in her ability to interact with the public,

7    coworkers, and supervisors.  *Id*. at 584.  Any lack of effort during Dr. McDonald's examination

8    does not account for the ALJ discounting the opinions from the other examining physician, and

9    he failed to provide any other basis for why these opinions were excluded from plaintiff's RFC.

10             The ALJ also failed to provide an explanation for why he rejected Drs. Aleshire and

11   Morgan's opinion that plaintiff is significantly impaired in her ability to complete a normal

12   workday or workweek without interruption from psychological symptoms.  Plaintiff's daily

13   activities and purported ability to complete tasks while on medication do not directly contradict

14   this opinion.  Accordingly, the reasons stated by the ALJ do not justify the rejection of these

15   opinions.

16             The court notes that Dr. McDonald specifically found that plaintiff was only mildly

17   impaired in her ability to complete a normal workday or workweek without interruption.  *Id*. at

18   480.  As Dr. McDonald's opinion is entitled to the same weight as Drs. Aleshire and Morgan's

19   opinion, the ALJ was free to resolve the conflict between these opinions.  *See Sheffer v. Barnhart*,

20   45 F. App'x. 644, 645 (9th Cir. 2002) ("Because the ALJ was entitled to resolve this evidentiary

21   conflict between conflicting opinions of equal weight, he did not need to provide specific and

22   legitimate reasons for rejecting [two treating physicians' opinions]."); *Thomas v. Barnhart*, 278

23   F.3d 947, 954 (9th Cir.2002) ("Where the evidence is susceptible to more than one rational

24   interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.");

25   *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995) (requiring specific and legitimate reasons

26   only where the conflicting opinion is not based on independent clinical findings); *Watson v.*

27   *Barnhart*, 2003 WL 21838474, *4 (N.D. Cal. August 1, 2003) (finding that ALJ decision was

28   consistent with the opinion of one of the plaintiff's treating physicians and, therefore, the ALJ

1   "did not need to articulate specific and legitimate reasons for disregarding [another treating

2   physician's] opinion.").

3          However, there is no indication that the ALJ adopted the opinion of Dr. McDonald over

4   the other two examining physicians.  Rather, it appears that the ALJ only intended to adopt the

5   examining physicians' opinion that plaintiff could perform simple and repetitive tasks, reject their

6   opinions in all other regards, and fully adopt the opinions from non-examining physicians Ikawa

7   and Murrilo.  *See* AR 37.  As the ALJ did not explain why he rejected Drs. Aleshire and

8   Morgan's opinion that plaintiff is significantly impaired in her ability to complete a normal

9   workday or workweek without interruption from psychological symptoms, this issue must also be

10  addressed upon remand.  *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir.1984) (holding

11  that the ALJ must explain why "significant probative evidence has been rejected").

12         Accordingly, the ALJ failed to give sufficient reasons for rejecting opinions from

13  plaintiff's examining physicians.

14  IV.    CONCLUSION

15         The ALJ failed apply the proper legal standard and her decision is not supported by

16  substantial evidence.  Accordingly, it is hereby ORDERED that:

17         1. Plaintiff's motion for summary judgment is granted;

18         2. The Commissioner's cross-motion for summary judgment is denied;

19         3. The matter is remanded for further consideration consistent with this order; and

20         4. The Clerk is directed to enter judgment in plaintiff's favor.

21  DATED: September 22, 2015.

22

23                                    EDMUND F. BRENNAN
                                      UNITED STATES MAGISTRATE JUDGE

24

25

26

27

28